**PUBLIC CITIZEN et al., Plaintiff,**

v.

**Arthur F. SAMPSON, Defendant.**

**Civ. A. No. 74–303.**

United States District Court,
District of Columbia.

July 24, 1974.

4. 28 U.S.C. § 1446(b).

Raymond T. Bonner and Alan B. Morrison, Washington, D. C., for plaintiff.

Carla A. Hills, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., David J. Anderson, and Michael W. Werth, Attys., Dept. of Justice, Washington, D. C., for defendants.

Maurice H. Klitzman, Chairman, Patent, Trademark & Copyright Law Section, and Douglas B. Henderson, Chairman, Briefing Committee, Patent, Trademark & Copyright Law Section, Bar Ass'n of the District of Columbia, Washington, D. ·C., on brief for the Bar Assn. of the District of Columbia, amicus curiae.

Gerald D. O'Brien, Arlington, Va., on brief for the Assn. for the Advancement of Invention and Innovation, amicus curiae.

Francis C. Browne, Washington, D. C., Counsel for American Council on Education and Assn. of American Medical College; Sheldon Elliot Steinbach, Washington, D. C., Counsel for American Council on Education; and Joseph A. Keyes, Washington, D. C., Counsel for Assn. of American Medical College, on brief for the American Council on Education and Assn. of American Medical College, amici curiae.

## MEMORANDUM OPINION

WADDY, District Judge.

This cause is before the Court on plaintiffs' motion for summary judg-

ment and defendant's motion to dismiss, the parties having submitted their respective points and authorities in support thereof and in opposition thereto, and the Court having considered same and the briefs *amici curiae,* and having heard oral arguments and taken said motions under advisement. Plaintiffs herein, seeking declaratory and injunctive relief, in a non-class action, attack on constitutional grounds certain regulations [1] promulgated by defendant Sampson, as Administrator of the General Services Administration, relating to standard contract clauses providing for the allocation of title and patent rights in possible resultant inventions developed under government-financed research and development contracts.

Plaintiffs are Public Citizen, Inc., a non-profit taxpaying organization supported by public donations, and seven individual Congressmen. All plaintiffs allege injury as taxpayers and consumers; Congressmen plaintiffs allege injury *qua* members of Congress.

Defendant is the Administrator of the General Services Administration (GSA) and as such is responsible for the formulation and promulgation of rules and regulations issued by that federal executive agency.

In the complaint, plaintiffs allege that the subject regulations authorize federal agencies to grant greater rights than a non-exclusive license ("exclusive rights") to patents and inventions developed under federally-financed research and development contracts, including the authority to grant such exclusive rights at the time of entering into such contracts, without Congressional approval as required by Article 4, Section 3, Clause 2 of the United States Constitution.[2]

Plaintiff has moved for summary judgment claiming that there is no genuine issue of material fact and that they are entitled to a judgment as a matter of law. Defendant has moved, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss the complaint on the grounds that (1) plaintiffs lack standing to sue and (2) the complaint fails to state a claim upon which relief can be granted. This Court finds that all plaintiffs lack standing to sue and that defendant's motion to dismiss should be granted.

## STANDING

In Flast v. Cohen, 392 U.S. 83, 88 S. Ct. 1942, 20 L.Ed.2d 947 (1968) the Supreme Court of the United States stated:

"The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions. Baker v. Carr, 369 U.S. 186, 204 [82 S.Ct. 691, 703, 7 L.Ed.2d 663] (1962). In other words, when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." 392 U.S. at 99, 88 S.Ct. at 1952.

In Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the Supreme Court formulated a dual test for determining standing to sue. This test requires, first, that plaintiffs allege that the challenged acts have caused them "injury in fact,

1. 38 Fed.Reg. 23782.

2. "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; . . . "

economic or otherwise," 397 U.S. at 152, 90 S.Ct. at 829, and second, that "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. at 153, 90 S.Ct. at 830. Or, as the Supreme Court stated in *Flast, supra,* a "logical nexus between the status asserted and the claim sought to be adjudicated." 392 U.S. at 102, 88 S.Ct. at 1953. This test for the determination of standing was re-affirmed by the Supreme Court in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

## STANDING AS TAXPAYERS

█ Plaintiffs allege, in paragraph 13 of the complaint, that "all of the plaintiffs are harmed as taxpayers because the patents and inventions will be developed at the government's expense, and the Regulations provide for the granting of exclusive rights thereto, without compensation, at the time of entering into the contract." In *Flast, supra,* the Supreme Court squarely faced the issue of taxpayer standing and found that

> "a taxpayer will be the proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute." 392 U.S. at 102, 88 S.Ct. at 1954.

Recently, in the case of Schlesinger v. Reservists Committee to Stop the War, —— U.S. ——, 94 S.Ct. 2924, 41 L.Ed.2d 706 (1974), the Court reaffirmed its decision in *Flast* in agreeing with the holding of Judge Gesell of this Court, Reservists Committee to Stop the War v. Laird, D.C., 323 F.Supp. 833, 840, that where the complaint

> "did not challenge an enactment under Art. I, § 8, but rather the action of the Executive Branch in permitting

Members of Congress to maintain their Reserve status," —— U.S. ——, 94 S.Ct. at 2935,

there could be no taxpayer standing under *Flast* since, as stated by Justice Stewart in his concurring opinion, " . . . there is simply no challenge to an exercise of the taxing and spending power." 42 LW at 5095. Accordingly, the plaintiffs in this action as taxpayers have no standing since they do not challenge Congressional action under Art. I, § 8, but rather they challenge the promulgation of regulations by an Executive agency, and fail to satisfy the nexus test required by *Flast*.

## STANDING AS CONSUMERS

All plaintiffs also allege injury as consumers. Paragraph 14 of the complaint alleges that "Congressmen plaintiffs as consumers and the consumers who support plaintiff Public Citizen will suffer economic harm, since those persons who acquire exclusive rights will enjoy a monopoly position, and consequently prices of many products affected by the patents and inventions will increase." The Court finds that these allegations are insufficient to meet the test of "injury in fact, economic or otherwise," required by *Data Processing, supra.*

The Supreme Court has had recent occasion to speak to the question of injury in fact. In O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), the Court, in holding that plaintiffs had failed to allege a case or controversy, said, at 4141:

> "Plaintiffs in the federal courts 'must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." Linda R. S. v. Richard D., 410 U.S. 614, 617 [93 S. Ct. 1146, 35 L.Ed.2d 536] (1973). There must be a 'personal stake in the outcome' such as to 'assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' Baker v. Carr, 369 U.S. 186,

204 [82 S.Ct. 691, 7 L.Ed.2d 663] (1962). Nor is the principle different where statutory issues are raised. *Cf.* United States v. SCRAP, 412 U.S. 669, 687 [93 S.Ct. 2405, 37 L.Ed.2d 254] (1973). *Abstract injury is not enough.* It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct. Massachusetts v. Mellon, 262 U.S. 447, 448 [43 S.Ct. 597, 67 L.Ed. 1078] (1923). *The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'* Golden v. Zwickler, 394 U.S. 103, 109–110 [89 S.Ct. 956, 22 L.Ed.2d 113] (1969); Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 [61 S.Ct. 510, 85 L.Ed. 826] (1941); United Public Workers v. Mitchell, 330 U.S. 75, 89–91 [67 S.Ct. 556, 91 L.Ed. 754] (1947)." (Emphasis supplied).

In *O'Shea,* plaintiffs alleged, in a class action, a continuing pattern of discrimination by a magistrate and a judge in bond proceedings, trials and sentencings. None of the named plaintiffs alleged any injury to himself in the manner specified. They sought relief on the grounds that if they were charged, held to answer and tried in any proceeding before the defendants they would be subjected to the discriminatory practices of which they complained. The Court stated at 496–499, 94 S.Ct. at 676, that

" . . . attempting to anticipate whether and when these respondents [plaintiffs] will be charged with crime and will be made to appear before either petitioner [defendant] takes us into the area of speculation and conjecture,"

and that

" . . . we doubt that there is 'sufficient immediacy and reality' to respondents' allegations of future injury to warrant invocation of the jurisdiction of the District Court,"

and further that

" . . . the threat of injury from the alleged course of conduct they attack is simply too remote to satisfy the 'case or controversy' requirement and permit adjudication by a federal court."

The position of consumer plaintiffs herein is as tenuous as that of the plaintiffs in *O'Shea, supra.* They do not allege that they have suffered injury by reasons of the regulations or that they are faced with any real or immediate threat of injury. They do not complain of any existing contract entered into pursuant to the regulations. They simply allege that as consumers they are in danger of suffering some possible future injury. Plainly, however, that danger is not immediate but rather remote and speculative. Whatever the legal status of the challenged regulations may be, the following events must first transpire before plaintiff consumers will be injured in fact: (1) there must be a federally-financed research and development contract wherein the government grants more than non-exclusive title and patent rights to the contractor in a future invention; (2) such invention must follow; (3) such invention must be patented; (4) the patented invention must be marketed; (5) whoever markets the invention must maintain a monopoly in the patent; and (6) the plaintiff consumers herein must be ultimate purchasers of the invention or a by-product thereof and be required to pay higher prices than they might otherwise have to pay. Such speculative allegations were insufficient in *O'Shea* to present a case or controversy.

The Court is of the opinion that, by parity of reasoning, the plaintiffs here have failed to satisfy the "case or controversy" requirement of Article III of the Constitution of the United States necessary to jurisdiction of this Court; and, in any event, they have not alleged "injury in fact" sufficient to give them standing to sue as consumers.

STANDING AS CONGRESSMEN

Congressmen plaintiffs allege, at paragraph 12 of the complaint, that

"[d]efendant's promulgation of these regulations harms the Congressmen by usurping their right to participate in decisions whether to dispose of government-financed patents and inventions as guaranteed by Article 4, Section 3, Clause 2 of the Constitution." This allegation, on its face, is illusory and fails to adequately allege injury in fact. The promulgation of the challenged regulations by the defendant cannot deprive, interfere with, or injure the uncontested right and power of plaintiff Congressmen to participate in decisions concerning disposal of government property. It is beyond peradventure that plaintiff Congressmen could tomorrow propose legislation regulating the contractual authority of the General Services Administration. Congress has not been unmindful of this power in the past in this precise area, see *e. g.*, 42 U.S.C. §§ 2182 & 2457, specifically regulating the authority of the Atomic Energy Commission and NASA to confer rights in government-owned patents or those being developed under contract. Even assuming a later finding that an invention developed under a federally-financed research and development contract is government property, any contracts conveying patent rights already entered into would be unenforceable without a showing of Congressional authority to have done so. For example, in the case of Houghton v. United States, 23 F.2d 386 (C.A.4 1928), the Court found that even where a government agency had agreed that an employee-inventor should retain title in an invention, the patent was government property and not subject to conveyance without authorization:

"No official of the government was authorized to give away any interest in it, and no subsequent recognition of a right in defendant, not even a conveyance to defendant, could have conferred any right upon him or been binding upon the government." 23 F.2d at 391.

The Court finds, therefore, that plaintiff Congressmen are not injured, either now or in the immediate future, in their duty to make decisions regarding the disposition of government property by the action of defendant in promulgating the regulations at issue herein, and thus they do not have the requisite standing to sue. This holding is not inconsistent with the cases cited by plaintiffs, specifically the cases of Mitchell v. Laird, 159 U.S.App.D.C. 344, 488 F.2d 611 (1973), and Kennedy v. Sampson, 364 F.Supp. 1075 (D.D.C.1973), appeal pending, but rather is distinguishable on the facts.

Therefore, it appearing that no plaintiff herein has standing to sue, the motion of plaintiffs for summary judgment is denied and the motion of defendant to dismiss is granted.